

FILED

DEC 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
333 CONSTITUTION AVE N.W
WASHINGTON D.C. 20036

Jack A.Schwaner
1Great Oak Cir. Apt B-44
Newport News Va. 23606
(757) 595-804

    Plaintiff

    Vs

United States Coast G uard
Reserve Training Center
Anne T Ewalt  Captain USCG

    Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case: 1:07-cv-02350
Assigned To : Sullivan, Emmet G.
Assign. Date : 12/19/2007
Description: FOIA/Privacy Act

The Plaintiff is a resident of Newport News,Va.

## COMPLAIN

The Plaintiff brings this action under the Freedom of Information Act  5 U.S.C..552 to secure the release of certain U.S. Coast Guard records in obtaining "non-deployable student names and Military addresses" .Capt. Anne T,Ewalt Commander of USCGRTC  "states this information is exempt from disclosure under the authority of 5 U.S.C. 552(b)(6). Release of this information would result in a clearly unwarranted invasion of personal privacy while shedding little or no light on how the US Coast Guard carries out its statutory duties."

### US Coast Guard RTC and US Coast Guard Headquarters has misapplied Exemption 6

The Coast Guard relies upon Exemption 6 as the basis for withholding the Plaintiff Foia request This Exemption protects an individual's personal privacy interests covering personnel, medical and similar files. Examples of commonly withheld information including home addresses and phone numbers social security numbers,date of birth and financial status.

The Plaintiff Foia request for non-deployable students names and military addresses stationed in the US Coast Guard Reserve Training Center Yorktown Va. The Plaintiff does not request anything that violates the Privacy Act such as home addresses , phone , social security,date of birth, financial status or rosters of overseas deployable personnel to sensitive areas or related to National Defense( Exempt:1)

### Argument

In-Hopkins Vs Department of the Navy(CA 84-1858) the U.S. District Court for the District of Columbia rejected the claim that Exemption 6.,the Plaintiff argues that commercial solicitation does

RECEIVED

DEC 1 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Page 2

serve a public interest see in Arieff v The Dept. of the Navy The receipt of unsolicited mail is an almost unavoidable result of having a mailing address ,the Supreme Court-observed"everyone's mail today is made up overwhelmingly of material he did not seek from persons he does not know:"and in Rowan v The US post Dept. The recipients are free to dispose of the unwanted commercial solicitations without even opening them The defendant's actions with the regard sought by the plaintiff reflect an inconsistency to the information approach the pursuit of those concerns and should not be used to justify nondisclosure under the Foia. :(See Hopkins v Navy)

**(2) Schwaner Vs Department of the Army** Ca-88-5341 the U.S court of Appeals rejected Exemption 2 for the government to withhold information solely on the basis that it is trivial and internal and held that the lists of names and addresses of agency personnel were not exempt because such "lists do not necessarily shed significant light is on the a rule or practice or practice;insignificant light is not enough" The Court considered the application of the Plaintiff to Agency administrative file markings that were"used to index,store,locate,retrieve and identify information".and concluded that these notations were not covered by Exemption 2 because they are not related to an Agency personnel rule or practice.

Since the aftermath of Sept.11, a memorandum of Oct.,12 issued by Attorney General Ashcroft to all Federal Departments and Agencies ,in its flurry to protect nation's security,and taking many anti-terrorist measures in its zeal 2 hard won Federal cases were disregarded concerning US District Court and US Court of Appeal verdicts.(1) U.S. District Court in Hopkins Vs Dept. of the Navy No.84-1868 Exemption 6 and (2) US Court of appeals in Schwaner v US Air Force No.88-5341 Exemption 2 . Both cases are related in obtaining names,and military addresses of Non-deployable service personnel.

The Supreme Court decided Dept. of Justice vs Reporters Committee for Freedom of the Press 57 USLW 4373 (Mar. 22,1989). The held: (1) that the identity and purposes of a requester under the Freedom of Information Act have " no bearing on the merits of his and her Foia request " id. At 4379, and (2) that the public interest in release of a requested document should be assessed by examining the public interest in a category of documents rather than the public interest in the particular,requested documents , id at 4381-82 . This Court therefore may not limit its assessment of the public interest to analysis of plaintiff's commercial purpose and (2) must assess the general Public in list so public employees of and low rank and not just in the requested by the plaintiff..

### Exhibits

The following exhibits A through E relates only to US Coast Guard Reserve Training Center Yorktown. denying Plaintiff Foia request that included instructions for Appeal and US Coast Guard Headquarters failure to respond.

(a)-letter dated 1 Dec,06 making a Foia requesting USCGRTC student personnel names,rate & military addresses.

(b)-letter dated Feb.15,2007 by Anne T Ewalt Captain U.S Coast Guard,Commander USCGRTC denying my Foia request of 1 Dec,06 ,including instructions of a appeal
(c)-letter dated 13 April,07 written by Plaintiff (responding to a missing letter by U S Coast Guard} to

Page 3

Commandant U.S. Coast Guard. .Headquarters.
(d)-letter dated 20 May 07 by Plaintiff to USCGRTC concerning the long Foia delay. appropriate is U.S.C. 552 (b)(1)
(e)-letter dated Jun.8, 2001 by 0-4 K .E. Lunday to plaintiff approves my Foia request in obtaining theP names and military addresses of non-deployable student Coast Guard personnel. No advance notice was given using Exemption 6 as a tool in the prevention in obtaining these lists,regardless of favorable verdicts in Exemption 6 "Hopkins Vs Dept. of the Navy" and Exemption 2 "Schwaner Vs Dept. of the Air Force". Plaintiff had a tremendous cost effecting production ,labor,printing and mailing expenses caused by the re-introduction of Exemption 6 the Plaintiff seeks compensation for its loss..
(f)-Hopkins Vs Dept of the Navy & Schwaner Vs Dept of the Air force. "copies enclosed".
.
(1b)-UNCLASSIFIED- Naval Message ,Dept. of the Navy same as Para:12 (Dec.85)

(1c)-UNCLASSIFIED-JCS Message Center Dept of Defense (Nov.86) Same as (a) and (b)

(1d)-letter dated Feb 4,1986 Foia request by Schwaner to Dept. of the Navy concerning Hopkins  v
    Dept. of the Navy  it states the navy is reevaluates the policy

**(2)-Schwaner  Vs  Dept. of the us Air Force**-Foia Exemption u.s.c. 552 (b)(2) verdict for the Plaintiff.

(2a)-Undated letter from Dept.0f the Air Force (Bolling AFB refusing Schwaner s Foia request.

(2b)-Dept. of the Air Force Dated April 8,1987 using Exemption 2  "it sounds good to us."

(2c)-US Court of Appeals verdict "it sounds good to the Appellant".

(2d)-letter dated May 15,1990 stating USAF asking for  full panel (refused)

(2e)-letter dated May 15,1990 stating the same as (2d

(2f)-memorandum fin the handling deployable units Dated Feb.15,1991**)**

**USCG Headquarters and USCGRTC enclosed are 13 exhibits concerning the Plaintiff Foia
    appeal # 075-07-02382 "no replies".**

### Conclusion
The Court should enter summary judgment for the Plaintiff because the Defendant misapplied the Exemption in the Plaintiff Foia request by withholding information under Exemption 5 U.S.C. 552 (b)(6) Hopkins Vs Dept. of the Navy No.84-1868 and 5 U.S.C. 552 (B)(2) Schwaner Vs US Air Force No. 88-5341 is not exempt from disclosure as a matter of law. Past history shows the Dept. of Defense will go to any length or for any reason to reiterate the denying of Foia requests under Exemptions 2 and 6.

Page 4

Respectfully Submitted,

Jack A,Schwaner Pro-se
1 Great Oak Cir.  Apt B-44
Newport News,Va.23606

## CERTIFICATE OF SERVICE

I certify that on        ,2007, I mail first class postage a complete copy of this informal brief to all parties,addressed as below.

The United States District Court
for the District of Columbia
333 Constitution Ave N.W.
Washington D.C. 20001

Jack A.Schwaner Pro-se
1 Great Oak Cir. Apt B-44
Newport News Va.23606
(757) 595-2804

(1)    *v.*

Not Reported in F.Supp.

Not Reported in F.Supp., 1985 WL 17673 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

c

Hopkins v. Dept. of the Navy
D.D.C.,1985.
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
Robert A. **HOPKINS**, Plaintiff,
v.
DEPARTMENT OF the **NAVY**, Defendant.
**CIV. A. No. 84-1868.**

Feb. 5, 1985.

John C. Dempsey, John J. Sullivan, Kirschner, Weinberg, Dempsey, Walters and Willig, Washington, D.C., for plaintiff.
Alan L. Ferber, Barbara L. Gordon, Dept. of Justice, Federal Programs Branch, Civil Division, Washington, D.C., for defendant.

*MEMORANDUM*
FLANNERY, Senior District Judge.
**\*1** This matter comes before the court on the parties' cross-motions for summary judgment on plaintiff's request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.,* for the current rosters for all permanent personnel and their ranks for certain units within the Marine Corps Development and Education Command ("MCDEC") at Quantico, Virginia. Defendant contends that the rosters sought by plaintiff are exempt from disclosure under exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6). For reasons stated herein, plaintiff's motion for summary judgment shall be granted.

I. *Background*

By letter dated March 20, 1984, plaintiff, a representative of the John Hancock Mutual Life Insurance Company, requested that defendant provide him with current rosters for all permanent personnel and their ranks for certain units within MCDEC, which would include the name, rank, and duty location of each individual in the units requested. Although a similar request by plaintiff had been approved in August 1983, defendant denied plaintiff's March 20 request on March 29, 1984, on the ground that disclosure of the rosters would constitute a "clearly unwarranted invasion of personal privacy" and that the rosters were therefore exempt from disclosure under FOIA's exemption 6. Defendant contends that service members have a privacy interest in avoiding dissemination of their names and duty addresses and that no public benefit derives from release of the rosters to a commercial requester. Defendant also claims that release of the information sought by plaintiff could constitute a threat to the security of service members stationed at Quantico.

Plaintiff contends first that release of names, ranks, and duty stations alone constitutes no violation of personal privacy. In this regard, plaintiff points out that similar information has been routinely released in the past, and that defendant continues to release identical information to other requesters, including routine publication of some of the information sought in the newspaper *Navy Times*. Second, plaintiff argues that defendant's security concerns are either inappropriate as a basis for nondisclosure under exemption 6, or that they are too speculative and insubstantial to justify nondisclosure under that exemption. Third, with regard to the public interest in disclosure, plaintiff argues that it is improper for this court to focus exclusively on plaintiff's particular interest in the requested information, and that instead the court must evaluate the interest of the public as a whole. In any case, plaintiff argues that commercial solicitation does serve a public interest. Finally, plaintiff contends that nondisclosure violates defendant's own regulations regarding information normally to be released under the FOIA.

II. *Discussion*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

07 2350

**FILED**

DEC 1 9 2007

**NANCY** MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Not Reported in F.Supp.

Not Reported in F.Supp., 1985 WL 17673 (D.D.C.)
(Cite as: Not Reported in F.Supp.)

Under exemption 6, an agency may withhold

> personnel and medical files and similar files the
> disclosure of which would constitute a clearly
> unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(6). Plaintiff concedes that the requested information is contained in "similar files" for purposes of the applicability of exemption 6. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment at 2 [hereinafter cited as Plaintiff's Memorandum]. To determine whether disclosure of the information would constitute a clearly unwarranted invasion of privacy, the court must first consider whether disclosure would create an invasion of privacy at all and, if so, how serious an invasion. *Washington Post Co. v. United States Department of Health and Human Services,* 690 F.2d 252, 261 (D.C.Cir.1982). The court then evaluates the public interest in disclosure. Finally, these competing interests are balanced to decide whether the invasion is "clearly unwarranted." *Id.* FOIA's requirement that disclosure be "clearly unwarranted" instructs the court to "tilt the balance [of disclosure interests against privacy interests] in favor of disclosure," recognizing that the presumption in favor of disclosure under exemption 6 "is as strong as can be found anywhere in the Act." *Id.*

**\*2** Applying this framework to the case at bar, the court is compelled to order defendant to disclose the requested information. As a preliminary matter, it is difficult to conclude that release of names, ranks, and official duty stations of servicemen stationed at Quantico would constitute any invasion of personal privacy at all. Unlike the cases cited by defendant, release of the information sought by plaintiff in this case would disclose nothing about any of the individuals listed other than the fact that they are members of the armed services, which is itself a matter of public record. For example, in *Wine Hobby USA, Inc. v. United States Internal Revenue Service,* 502 F.2d 133 (3d Cir.1974), the plaintiff sought a list of the names and addresses of all persons who had registered with the United States Bureau of Alcohol, Tobacco

and Firearms to produce wine for family use in the Mid-Atlantic region. *Id.* at 134. In finding that the agency's decision to withhold the information was proper under exemption 6, the court recognized that disclosure of the lists would have involved release of not only the *home* addresses of each registrant, but would have also revealed information concerning the *personal activities* within the home, namely wine-making, as well as data regarding the family status of each registrant. *Id.* at 137. Similarly, in *Core v. United States Postal Service,* 730 F.2d 946 (4th Cir.1984), the court recognized that release of data on unsuccessful applicants for positions with the Postal Service would reveal not just their names and addresses, but also the fact that these individuals had failed to get a job.[FN1] By contrast, the disclosures sought here reveal nothing about the individuals whose names appear on the rosters other than the fact of their military service.

Defendant's contention that the receipt of unsolicited commercial mailings is itself a violation of personal privacy is also questionable. First, and perhaps most significantly from the standpoint of the FOIA analysis, it appears clear that the invasion of privacy contemplated by exemption 6 must result from the very "production" of the documents, rather than, as here, as a "secondary effect" of their release. *See Arieff v. United States Department of the Navy,* 712 F.2d 1462, 1468 (D.C.Cir.1983). The invasion of privacy predicted by defendant would result not from the release of the rosters sought by plaintiff, but from the commercial solicitation which would result as a consequence of the disclosure. Second, the receipt of unsolicited mail is an almost unavoidable result of having a mailing address. As the Supreme Court observed in another context, "Everyman's mail today is made up overwhelmingly of materials he did not seek from persons he did not know." *Rowan v. United States Post Office,* 397 U.S. 728, 736, 90 S.Ct. 1484, 1490 (1970). Further, the recipients are free to dispose of unwanted commercial solicitations without even opening them.

**\*3** Finally, defendant's arguments that it is refusing to release the rosters to protect servicemembers from unwanted solicitation and to avoid a potential threat to military security are undercut by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1985 WL 17673 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

defendant's routine release of information similar or identical to that sought by plaintiff. Although not as complete as the rosters sought here, lists of names, ranks, and new duty stations are routinely published in the *Navy Times.* Further, defendant concedes the accuracy of a report that the Defense Department recently sold a list of the names and addresses of 1.4 million service members to the Reagan-Bush Campaign Committee, which had requested the information under the FOIA. *See* Memorandum in Support of Motion for Leave to File Supplemental Affidavit in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment, Attachment 1 & Exhibit 1. If it is the very receipt of unsolicited mass mailings which constitutes the violation of personal privacy, as defendant apparently contends, defendant cannot be heard to invoke exemption 6 to prevent some mailings but not others. On the other hand, defendant's concern over security risks attendant with release of rosters is inconsistent with routine publication of names and duty stations of officers in the *Navy Times.*[FN2]

Even if the court were to recognize that release of this information could constitute an invasion of privacy sufficient to require a balancing of the public and private interests involved, however, the court would be unable to conclude that any invasion of privacy from the disclosures sought would be a " clearly unwarranted." Although the court agrees that this plaintiff's interest in this information is insubstantial in terms of the overall public benefit that will result from disclosure, it appears clear from the teachings of the court of appeals in *Washington Post Co. v. United States Department of Health and Human Services* and *Ditlow v. Shultz* that the particular need of the requester is irrelevant under FOIA.[FN3] Therefore, given defendant's concession that a variety of public purposes may justify disclosure of this information, the court would be unable to conclude that the minimal privacy interest involved would "clearly" outweigh the overall public interest in availability of this information.[FN4]

In sum, the court holds that, given the questionable existence of any reasonable expectation of privacy regarding the official duty stations of service

members stationed at Quantico, the minimal privacy intrusion occasioned by the receipt of unsolicited commercial mail by those service members, and defendant's continuing policy of releasing information similar or identical to that requested by plaintiff, nondisclosure under exemption 6 of the rosters sought in this case is improper as a matter of law. Although the purpose for which plaintiff admittedly intends to use this information is clearly not that intended by Congress in enacting the FOIA, the court is unable to agree with defendant's contention that the invasion of privacy, if any, which will result from commercial use of these names and addresses is sufficient to rise to the level which would justify nondisclosure under exemption 6. The court is sympathetic to defendant's concerns for the privacy and security of its service members. Nevertheless, defendant's actions with regard to the information sought here reflect an inconsistent approach to the pursuit of those concerns which may not be used to justify nondisclosure under the FOIA.

\*4 An appropriate Order accompanies this Memorandum.

### ORDER AND JUDGMENT

This matter comes before the court on the parties' cross-motions for summary judgment on plaintiff's request under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* For reasons discussed in the accompanying Memorandum, filed by the court this date, it is, by the court, this 5th day of February, 1985,

ORDERED, ADJUDGED AND DECREED that plaintiff's motion for summary judgment is granted; and it is further

ORDERED, ADJUDGED AND DECREED that defendant's motion for summary judgment is denied.

> FN1. *Id.* at 948-49; *see also HMG Marketing Associates v. Freeman,* 523 F.Supp. 11, 15 (S.D.N.Y.1980) (disclosure of mailing list of persons who had inquired

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1985 WL 17673 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

about a government sale of silver dollars would "alert the world that the individuals listed are interested in obtaining valuable coins").

FN2. Defendant's claims that routine release to commercial requesters would threaten privacy interests or heighten the threat of terrorist attacks is further undercut by the fact that noncommercial requesters who may still routinely obtain these lists are completely free to resell them or distribute them in any manner they see fit. As the government frequently points out in arguing against release of information to requesters with an arguably "bona fide" purpose, agencies have no means of controlling the use made of information released pursuant to a FOIA request. Once privacy rights are breached by disclosure, they are forever lost.
Regarding the security concerns raised by defendant, the court seriously questions whether such interests are even cognizable under exemption 6. *See Simpson v. Vance,* 648 F.2d 10, 17 (D.C.Cir.1980). Assuming that security concerns can constitute privacy interests for purposes of exemption 6, however, withholding this roster on security grounds still appears improper. As defendant concedes, a roster of ranks and duty stations of personnel at Quantico that did not include names of personnel could not be withheld under exemption 6 because the information could not be identified as applying to any individual. The court is unable to discern how any security threat from the release of ranks and duty stations would be heightened by including the names of servicemembers, particularly in light of the routine dissemination of similar or identical information described *supra.*

FN3. *See Washington Post,* 690 F.2d 252, 258-59 & n.17 (D.C.Cir.1982); *Ditlow,* 517 F.2d 166, 170-72 & n.21 (D.C.Cir.1975). As plaintiff points out, such an evaluation of the particular

requester's need would encourage requesters to represent a motive which a reviewing court would find sympathetic or to procure a more sympathetic individual or organization to make the FOIA request.
In addition, such a policy would encourage arbitrary distinctions among requesters. *See* Plaintiff's Memorandum at 15-16 n. 2.

FN4. Plaintiff also contends that defendant's regulations mandate disclosure of the information sought here. Regulations adopted to implement the Privacy Act include the "name, rank, gross salary, present and past duty assignments, future assignments which are finalized, office phone number, ... duty status ..., date of birth, marital status, and number, names, sex and ages of dependents" as examples of information concerning military personnel which can normally be released without the consent of the individual "upon request." 32 C.F.R. § 701.105(b)(2) (1984).
Regulations adopted to implement FOIA provide that "[a] request for a mailing list for names and duty station addresses may be releasable, however certain facts must be brought to the attention of the requester prior to releasing the list." 32 C.F.R. § 701.7(g)(2) (1984). Defendant argues that "guidance messages" from the Secretary of the Navy which provide that requests for rosters for the purposes of commercial solicitation should normally be denied are merely interpretive rules. *See* Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment at 18-20. While the Secretary's "guidance messages" appear to do more than merely "interpret" the department's regulations, the regulations themselves do not necessarily appear to mandate disclosure in all cases. The court's disposition of the propriety of withholding the rosters under exemption 6, however, renders it unnecessary to determine whether defendant's regulations

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                            Page 5

Not Reported in F.Supp., 1985 WL 17673 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**


        themselves mandate disclosure.
D.D.C.,1985.
Hopkins v. Dept. of the Navy
Not Reported in F.Supp., 1985 WL 17673 (D.D.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(2)**

898 F.2d 793

898 F.2d 793, 283 U.S.App.D.C. 196, 58 USLW 2563
**(Cite as: 898 F.2d 793)**

▷
Schwaner v. Department of Air Force
C.A.D.C.,1990.

United States Court of Appeals,District of
Columbia Circuit.
Henry C. **SCHWANER**, Appellant,
v.
DEPARTMENT OF the **AIR FORCE**.
No. 88-5341.

Argued March 16, 1989.
Decided March 16, 1990.
Rehearing Denied May 9, 1990.

Insurance agent brought action against Air Force
under Freedom of Information Act, seeking
disclosure of list of names and addresses of
personnel of base. The United States District
Court for the District of Columbia, 698 F.Supp. 4,
Gerhard A. Gesell, J., granted summary judgment
for Air Force, and agent appealed. The Court of
Appeals, Stephen F. Williams, Circuit Judge, held
that names and duty addresses of Air Force base
personnel, requested to be disclosed by insurance
agent, were not within Freedom of Information Act
exemption for documents "related to rules and
practices" of agency, despite contentions by Air
Force that list would show its data collecting
processes and reveal information about duty
assignment rules and practices.

Reversed and remanded.

Revercomb, District Judge, sitting by designation,
filed dissenting opinion.
West Headnotes
**[1] Records 326 ☞57**

326 Records
    326II Public Access
        326II(B)    General    Statutory    Disclosure
Requirements
            326k53    Matters    Subject    to    Disclosure;

Exemptions
            326k57    k.    Internal    Memoranda    or
Letters; Executive Privilege. Most Cited Cases
Information requested need not actually be "rules
and    practices"    to    qualify    for    Freedom    of
Information Act exemption for documents related
solely to internal personnel rules and practices. 5
U.S.C.A. § 552(b)(2).

**[2] Records 326 ☞57**

326 Records
    326II Public Access
        326II(B)    General    Statutory    Disclosure
Requirements
            326k53    Matters    Subject    to    Disclosure;
Exemptions
            326k57    k.    Internal    Memoranda    or
Letters; Executive Privilege. Most Cited Cases
Adjudicatory decisions of agency are but one
species of information that can be withheld under
Freedom    of    Information    Act    exemption    for
documents related to material personnel rules and
practices because such information is closely
related to rule or practice. 5 U.S.C.A. § 552(b)(2).

**[3] Records 326 ☞57**

326 Records
    326II Public Access
        326II(B)    General    Statutory    Disclosure
Requirements
            326k53    Matters    Subject    to    Disclosure;
Exemptions
            326k57    k.    Internal    Memoranda    or
Letters; Executive Privilege. Most Cited Cases
All trivial information is not permitted to be
withheld under Freedom of Information Act simply
because it manifests agency practice of collecting
information. 5 U.S.C.A. § 552(b)(2).

**[4] Records 326 ☞57**

326 Records

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

898 F.2d 793

898 F.2d 793, 283 U.S.App.D.C. 196, 58 USLW 2563
(Cite as: 898 F.2d 793)

326II Public Access
  326II(B)  General  Statutory  Disclosure
Requirements
     326k53 Matters Subject to Disclosure;
Exemptions
      326k57 k. Internal Memoranda or
Letters; Executive Privilege. Most Cited Cases
Names and duty addresses of Air Force base
personnel, requested to be disclosed by insurance
agent, was not within Freedom of Information Act
exemption for documents "related to rules and
practices" of agency, despite contentions by Air
Force that list would show its data collecting
processes and reveal information about duty
assignment rules and practices; virtually all
government information is linked to data collecting
processes, and link to duty assignment practices was
tenuous and indirect. 5 U.S.C.A. § 552(b)(2).

*794 **197 Appeal from the United States District
Court for the District of Columbia (D.C. Civil
Action No. 88-0560).

Craig Becker, for appellant.
Richard L. Huff, Atty., U.S. Dept. of Justice, with
whom Jay B. Stephens, U.S. Atty., John D. Bates,
and  R.  Craig  Lawrence,  Asst.  U.S.  Attys.,
Washington, D.C., were on the brief, for appellee.

Before BUCKLEY and WILLIAMS, Circuit
Judges, and GEORGE H. REVERCOMB, FN*
United States District Judge for the District of
Columbia.

     FN* Sitting by designation pursuant to 28
     U.S.C. § 292(a).

Opinion for the Court filed by Circuit Judge
STEPHEN F. WILLIAMS.
Dissenting opinion filed by District Judge
REVERCOMB.STEPHEN F. WILLIAMS, Circuit
Judge:
Appellant Henry Schwaner is an insurance agent.
In the hopes of finding new customers, he invoked
the Freedom of Information Act ("FOIA"), 5 U.S.C.
§ 552 (1988), to request from the Department of the
Air Force a roster containing the names and military

duty addresses of the five lowest ranks of personnel
stationed at Bolling Air Force Base. The Air Force
denied the request, relying on § 552(b)(2), which
exempts "matters that are ... related solely to the
internal personnel rules and practices of an agency."

Schwaner filed suit in district court, which granted
summary judgment for the Air Force. Henry C.
Schwaner v. Department of the Air Force, 698
F.Supp. 4 (D.D.C.1988). The district court first
recognized that:
The language of ... Exemption (b)(2) ... would
appear not to envision a request such as Schwaner's.
While it is the Air Force's practice to maintain this
data, along with other miscellaneous information for
purely internal convenience, the data itself is not a
practice.

Id. at 5 (citation omitted). Nevertheless the court
held that Schwaner's request was subject to
exemption 2 because the records were "purely
internal." Id. The district court then weighed the
public interest in the disclosure of such lists and,
finding little or none, held the exemption
applicable. As the list does not bear an adequate
relation to any rule or practice of the Air Force as
those terms are used in exemption 2, we reverse.

Our cases have sought to give exemption 2 some
structure by adopting a two-step process. "First, the
material withheld should fall within the terms of the
statutory language." Founding Church of
Scientology, Wash. D.C. v. Smith, 721 F.2d 828,
830 n. 4 (D.C.Cir.1983). If so, the agency may
defeat disclosure by proving that either "disclosure
may risk circumvention of agency regulation",
Department of the Air Force v. Rose, 425 U.S. 352,
369, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976),
see also Crooker v. Bureau of Alcohol, Tobacco &
Firearms, 670 F.2d 1051, 1074 (D.C.Cir.1981) (en
banc) (risk of circumvention of statutes), or "the
material relates to trivial administrative matters of
no genuine public interest," Founding Church of
Scientology, 721 F.2d at 830 n. 4.

*795 **198 In a series of cases addressing whether
the requested information related sufficiently to
internal concerns of the agency, we framed the
initial test as one of "predominant internality." See

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

898 F.2d 793, 283 U.S.App.D.C. 196, 58 USLW 2563
(Cite as: 898 F.2d 793)

*Crooker,* 670 F.2d at 1074. The qualifier " predominant" arose out of a recognition that if the word "solely" (in the phrase "related solely") were interpreted literally and absolutely, exemption 2 would cover nothing at all. As Judge Leventhal wrote in a separate concurrence in *Vaughn v. Rosen,* 523 F.2d 1136, 1150-51 (D.C.Cir.1975), "there are few events ... that occur without so much as a tiny ripple effect outside their area of prime impact." On the other hand, to disregard "solely" would make the exemption all-encompassing. *Id.* To escape the all-or-nothing dilemma, Judge Leventhal proposed that the "matter" must relate " predominantly" to internal agency rules and practices, *id.* at 1151, and the court *en banc* adopted his formula in *Crooker,* 670 F.2d at 1056-57, 1074.

We have often applied the "predominant internality" test without emphasizing the words "rules and practices." See, e.g., *NTEU v. U.S. Customs Service,* 802 F.2d 525, 528 (D.C.Cir.1986). But in such cases the requested information was typically a rule or practice in the most literal sense. See, e.g., *id.* (rules for evaluating job applicants); *Crooker* (training manual for agents); *Cox v. Dep't of Justice,* 601 F.2d 1, 4-5 (D.C.Cir.1979) (marshal's manual); *Ginsburg, Feldman & Bress v. Federal Energy Administration,* 591 F.2d 717, 723, vacated and reheard en banc, 591 F.2d 752 (D.C.Cir.1978) (affirming by an equally divided vote district court's judgment that guidelines and instructions for audits were within exemption 2). For similar cases from other circuits, see *Kaganove v. EPA,* 856 F.2d 884 (7th Cir.1988) (guidelines and specifications for employee promotions); *Dirksen v. Dep't of Health and Human Serv.,* 803 F.2d 1456 (9th Cir.1986) (internal processing guidelines for medicare claims); *Hardy v. Bureau of Alcohol, Tobacco & Firearms,* 631 F.2d 653, 656-57 (9th Cir.1980) ( " raids and searches" manual); *Cox v. Levi,* 592 F.2d 460 (8th Cir.1979) (FBI manual of rules and regulations); *Windels, Marx, Davies & Ives v. Dep't of Commerce,* 576 F.Supp. 405, 411-13 (D.D.C.1983) (computer program for processing audits).

[1] As the government justly stresses, information need not actually *be* "rules and practices" to qualify under exemption 2, as the statute provides that

matter "related" to rules and practices is also exempt. In *Department of the Air Force v. Rose,* 425 U.S. 352, 369, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976), for example, the materials requested were summaries of cases decided by the Air Force Academy's Honor Committee, the body charged with enforcing its Honor and Ethics Code. Though the actual decision in *Rose* was that exemption 2 could not defeat that particular request, the Court apparently assumed that the material was related closely enough to "rules and practices" that exemption 2 was a potential defense. While case summaries are not "rules and practices" themselves (as the Honor Code itself would be), they do manifest and implement the rules and practices of the Academy relating to the conduct of cadets. The Academy in fact distributed the summaries to the cadets "precisely in order to assure their compliance with the known content of the Codes." *Id.* at 364-65, 96 S.Ct. at 1600-01. Thus the Court evidently regarded the summaries as part of the " content" of the Codes, broadly conceived, as one might speak of judicial decisions becoming part of a statute for purposes of a party's accommodation of his conduct to the legislative command.

The government draws a poor parallel between the documents in *Rose* and the material requested here. It argues that the personnel data sought here is similar to the case summaries from the Honor Committee, as it is "exclusively derived from, and thus [is] 'related solely to,' the Air Force's 'practice ' of extracting selected personnel data from [various] files ... and data bases and compiling them into the computerized Advanced Personnel Data System." Appellee's Brief at 11. The argument itself makes clear that the only "practice" to which the material is related *796 **199 is the practice of collecting the data. As bureaucracy is nothing if not a creature of habit, the sweep of the claim is broad indeed, excluding only (predominantly internal) information collected on an official frolic.

The government can cite only one decision that even arguably would extend *Rose* to encompass a list of names and duty addresses. In *Bernknopf v. Califano,* 466 F.Supp. 319 (W.D.Penn.1979), the court exempted material describing the outside work activities of each agency administrative law

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

898 F.2d 793

898 F.2d 793, 283 U.S.App.D.C. 196, 58 USLW 2563
**(Cite as: 898 F.2d 793)**

judge that had been approved by the agency. The requester-himself an ALJ for the agency-had asked for names and addresses of the ALJs along with the outside work data. The agency had turned over a partial list and had deleted the names and addresses of the judges. The requester appears not to have objected to the name-and-address deletion; his primary concern was evidently to secure the agency's outside work rulings for the ALJs as to whom the agency had turned over nothing. (As an ALJ who had recently been denied authorization for outside work, *id.* at 320, he had an obvious interest in discovering the agency's practice in approving such work.) The district court found that the " *decisions* [were] agency determinations for the physical control of its employees consistent with the agency's powers." *Id.* at 321 (emphasis added). Thus, like *Rose's* Honor Code case summaries, they were adjudicatory decisions manifesting the agency's "practice" for control of personnel, and implementing and reflecting its rules. This is a far cry from information that manifests only an agency's practice of collecting information.

[2] Adjudicatory decisions are but one species of information that can be withheld because it is closely "related" to a rule or practice. Thus, courts have also exempted materials that are so closely related to rules and practices that disclosure could lead to disclosure of the rule or practice itself. For example, this court has held that an agency can delete sensitive notations on documents where they indicated an agency's practices as to their internal routing and distribution. See *Lesar v. United States Dep't of Justice,* 636 F.2d 472, 485-86 (D.C.Cir.1980); *Founding Church of Scientology,* 721 F.2d at 831. The materials in these cases fall handily within the statutory requirement of being " related" to agency rules or practices in that they bear upon, or cast light upon, those practices. Moreover, in these cases, the government's asserted interest in preventing disclosure (the second step of the exemption 2 test) was to protect the identity of FBI informants, *Lesar,* 636 F.2d at 486, or to prevent the circumvention of agency regulation, *Founding Church of Scientology,* 721 F.2d at 831, not that the underlying rules were too trivial to justify the nuisance of collection and disclosure. See *Rose,* 425 U.S. at 369-70, 96 S.Ct. at 1603-04.

Judicial willingness to sanction a weak relation to " rules and practices" may be greatest when the asserted government interest is relatively weighty.

[3] The government also obliquely invokes the well-chewed legislative history of exemption 2, in which the Senate and House reports reflect, as is well recognized, a potentially serious conflict. See *id.* at 362-70, 96 S.Ct. at 1599-03. The government characterizes the Senate Report as supporting exemption of all "trivial administrative matters." Brief for Appellee at 12. As did its treatment of the cases, this wrenches language out of context. The Senate Report said only:
Exemption No. 2 relates only to the internal personnel rules and practices of an agency. Examples of these may be *rules* as to personnel's use of parking facilities or regulation of lunch hours, statements of policy as to sick leave, and the like.

S.Rep. No. 813, 89th Cong., 1st Sess. 8 (1965) (emphasis added). As the examples were all of trivial rules, interpreters have read the report as reflecting an intent to protect only such trivia. See *Rose,* 425 U.S. at 365, 369-70, 96 S.Ct. at 1601-03. The House Report, by contrast, appeared to reflect a readiness to allow disclosure of all trivia (rules or not) and to withhold only more important rules and practices:*797 **200 2. Matters related solely to the internal personnel rules and practices of any agency: Operating rules, guidelines, and manuals of procedure for Government investigators or examiners would be exempt from disclosure, but this exemption would not cover all "matters of internal management" such as employee relations and working conditions and routine administrative procedures which are withheld under the present law.

H.R.Rep. No. 1497, 89th Cong., 2d Sess. 10 (1966). It appears that the conflict is to be reconciled by protecting trivial rules and practices, following the Senate, and non-trivial ones whose disclosure would circumvent agency regulation, following the House. See *Rose,* 425 U.S. at 369, 96 S.Ct. at 1603; *Founding Church of Scientology,* 721 F.2d at 830 n. 4 (2d paragraph). None of this in the slightest supports the idea that all trivial

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

898 F.2d 793

898 F.2d 793, 283 U.S.App.D.C. 196, 58 USLW 2563
**(Cite as: 898 F.2d 793)**

information may be withheld simply because it manifests an agency practice of *collecting* the information.

[4] The government draws another argument from the legislative history. Relying on the Senate language for the proposition that it could withhold " the parking, dining and sick call arrangements" for the junior enlisted personnel at Bolling, it claims it must be free to withhold "the addresses of the units to which they are assigned." Appellee's Brief at 13. Thus if parking information may be withheld because it reflects the agency's parking assignment rules, duty assignment information may be withheld because it reflects duty-assignment practices.

Of course the Senate report does *not* say that any *information* as to parking arrangements may be withheld under exemption 2; it says only that "rules " as to it and kindred trivia may be withheld. The government's argument is therefore that a list of individual parking assignments is related to-casts a significant light upon-parking assignment practices, and is withholdable, and that a list of duty addresses is similarly related to duty assignment practices, and is equally withholdable.

In a broad sense, of course, any list sheds some light on a rule or practice. It necessarily reflects someone's decision that the enumerated persons or things fell within some defining term, and any term implies at least a practice; if the conduct connoted by a word were unique, it would mean nothing unless accompanied by, say, pictures or recordings of the event. But lists do not necessarily (or perhaps even normally) shed significant light on a rule or practice; insignificant light is not enough.

But even if a list of parking assignments were exempt as so closely related to agency parking rules (a proposition we reject), that would not sweep up the information sought here. The request is for names and duty addresses, *not* unit assignments.[FN1] The Air Force obviously follows "practices" in making assignments (presumably matching talent with need), and assignments are performed at specific locales. But it does not follow that the Air Force has a practice, in the conventional sense, of relating specific talents to specific *locales.* A list

of people having the U.S. Courthouse, 333 Constitution Avenue, Washington, D.C., as their duty addresses says virtually nothing about government practices in staffing the federal courts. It is a manifestation of that practice only in the most tenuous sense.

> FN1. Schwaner's request was primarily for a list of names and addresses. Though the district court stated that he wanted these " alphabetically arranged on a unit basis," *Schwaner,* 698 F.Supp. at 4, he in fact asked for this only in the alternative, requesting the addresses be arranged " either alphabetically but preferably alphabetically on a unit basis." Defendant's Statement of Material Facts As To Which There Is No Genuine Dispute ¶ 1.

To stretch the word "related" as the government proposes would be to fall into precisely the error against which Judge Leventhal cautioned in *Vaughn,* and make the exemption "all-encompassing." 523 F.2d at 1150. Perhaps the solution is to extend his concept of "predominance" to this issue as well as the problem of internality. In any event, there is a chasm between the case summaries in *Rose,* marking out the contours of the Air Force Academy's Honor and Ethics Codes, and a list of personnel and their duty addresses. For the latter, the only links to government *798 **201 practices are the link to data-collecting practices, which is shared by virtually all government information, and the link to duty assignment rules and practices, which is tenuous and indirect. These are not enough.

A generic internal trivia exemption might be sound policy. It would, however, entail swarms of court decisions identifying and "weighing" the public interest in disclosure, a task for which courts are not especially well suited. See *United States Dep't of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 1483, 103 L.Ed.2d 774 (1989) (acknowledging concern over case-by-case balancing under exemption 7(C)); cf. *Crooker,* 670 F.2d at 1074 n. 60 ("Nor is it for this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

898 F.2d 793

898 F.2d 793, 283 U.S.App.D.C. 196, 58 USLW 2563
**(Cite as: 898 F.2d 793)**

court to decide which disclosures are in the public interest."). Of course once the government gets over the threshold test under exemption 2 a court must face that. But to dilute the threshold by ignoring the words "rules and practices" would greatly increase the frequency of such decisions. In any event, whatever the case for such an exemption, Congress did not enact it.

\* \* \* \* \* \*

Finding the requested list not to be "related solely to ... [agency] rules and practices," we need not reach the second step of the analysis, which here would entail the weighing of the "public interest" in disclosure against the government's interest in avoiding the burden of producing the data. See *Rose,* 425 U.S. at 369-70, 96 S.Ct. at 1603. Accordingly, we must reverse and remand for further proceedings consistent with this opinion. Repugnant as it may seem to order disclosure to an insurance agent who seeks only a pool in which to fish for commissions, the principle of disregarding the identity of the requester, see *Reporters Committee.* 109 S.Ct. at 1480, means that only by allowing Schwaner's claim can we keep exemption 2 within its proper confines.

*So ordered.*

REVERCOMB, District Judge, dissenting:
As the majority recognizes, this court has "often applied the 'predominant internality' test without emphasizing the words 'rules and practices.' " However, the majority fails to establish by what standard it is now applying the requirement of "rules and practices" to the material in the instant case. Rather, the opinion cites a number of cases where "the requested information was typically a rule or practice in the most literal sense" and then concludes that the material at issue here is not a "rule or practice." However, while the factual circumstances heretofore presented to this court have been fortuitously limited to what the majority opinion characterizes as rules and practices "in the most literal sense," this is hardly a determinative means by which to exclude the material in the instant case from the statutory language. The decisions upon which the majority relies do not

purport to define or interpret the phrase "rules and practices" and nothing in those decisions suggests that the compilation of a list of names and addresses of personnel at Bolling Air Force Base would not fall within the scope of "rules and practices."

The majority appears not to distinguish a "rule" from a "practice" but conflates the two terms. In a "most literal sense," this judge would read "practice " to have a more expansive meaning than "rule" and to encompass the information at issue in this case. Indeed, this judge cannot imagine a personnel practice by an agency that could be more fundamental than obtaining and compiling the names and addresses of its employees. The majority discounts this practice because it is a " practice of collecting the data" which the agency performs merely as "a creature of habit...." This view, however, assumes that the names and addresses of the personnel were collected merely as a futile exercise and ignores the legitimate management and administrative needs of the agency in compiling such information.

The majority's application of "rules and practices" in the instant case is fundamentally inconsistent with the purpose of exemption two and the policies of FOIA itself.**\*799 \*\*202** In determining what constitutes a "rule or practice" it is imperative that the phrase be interpreted in light of the general thrust of the exemption and the fundamental purpose of FOIA.[FN1] As the Supreme Court has stated in *Department of the Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), the purpose of exemption 2 "is simply to relieve agencies of the burden of assembling and maintaining for public inspection matter in which the public could not reasonably be expected to have an interest." *Id.* at 369-70, 96 S.Ct. at 1603. Moreover, as this court has previously recognized, exemption 2 embodies "a congressional judgment that material lacking external impact is unlikely to engage legitimate public interest, the touchstone of the policies underlying" the Freedom of Information Act. *Cox v. Department of Justice,* 601 F.2d 1, 4 (D.C.Cir.1979); *see also Martin v. Lauer,* 686 F.2d 24, 34 (D.C.Cir.1982) (exemption 2 "serves to relieve the agency from the administrative burden of processing FOIA request when internal matters are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

898 F.2d 793

898 F.2d 793, 283 U.S.App.D.C. 196, 58 USLW 2563
(Cite as: 898 F.2d 793)

Page 7

not likely to be the subject of public interest"). The majority's "interpretation" of "rules and practices" to exclude the material in the instant case has now turned the fundamental policy of exemption 2 and FOIA on its head. As the instant case demonstrates, agencies in fact will now be required to suffer the administrative burden of providing individuals with material which is of no legitimate public concern. Moreover, in addition to their executive responsibilities, agencies now must also serve as a clearing house of routine and trivial information which is open to the personal whims or commercial interests of any individual.

> FN1. In considering what material was " internal" to an agency within the statutory language of exemption 2, this court recognized that its interpretation required a pragmatic approach which would effectuate the purpose of the exemption within the overall scheme of the Freedom of Information Act. *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1056-57 (D.C.Cir.1981).

The principal rationale that the majority offers against reading the "rules and practices" to include " generic internal trivia" is because it would "entail swarms of court decisions identifying and 'weighing ' the public interest in disclosure, a task for which courts are not especially well suited." Whether well-suited or not, the role of determining the public interest under exemption 2 is precisely the role which the legislature has given the court under the statute where, as the majority recognizes, "once the government gets over the threshold test under exemption 2 a court must face that."

Because this judge finds the material to be within the scope of "rules and practices" the material must still be analyzed to determine whether, under the statutory language, it is an *internal* rule or practice. Since information which is "internal" to an agency might have some significance outside the agency, and almost any information might have *some* link to external matters, this court has looked to whether the information is "predominantly" internal. *Crooker v. Bureau of Alcohol, Tobacco & Firearms,*

670 F.2d 1051, 1056-57 (D.C.Cir.1981) (citing *Vaughn v. Rosen,* 523 F.2d 1136, 1150-51 (D.C.Cir.1975)).

The information sought here meets the test of " predominant internality." The list of personnel names and addresses is, if anything, *less* closely related to external concerns than the examples listed in the legislative history, which could at least embody substantive policies relating to sick leave, parking regulations, or lunch hours. The data base from which appellant wants to extract a list of names was compiled for the administrative convenience of the Air Force. It has no apparent uses beyond personnel management at Bolling Air Force Base. It would require the courts to engage in speculation to attempt to find a use for such a list which had a purpose other than the facilitation of personnel policies and practices at Bolling Air Force Base. No meaningful suggestion has come from appellant which indicates any use of the information by the Air Force going beyond the management of its personnel, and it is virtually self-evident that "the management of its own employees is a matter of intra-agency functioning.... " *\*800 \*\*203 National Treasury Employees Union v. Customs Service,* 802 F.2d 525, 531 (D.C.Cir.1986).

However, an exemption 2 analysis does not end with the determination that the information sought is related to an internal rule or practice; the information must also be of no genuine public interest. The Supreme Court held in *Department of Air Force v. Rose* that exemption 2 is not applicable to matters subject to a "genuine and significant public interest." 425 U.S. at 369-70, 96 S.Ct. at 1603. As this court has held, "if the material relates to trivial administrative matters of no genuine public interest, exemption would be automatic under the statute." *Founding Church of Scientology v. Smith,* 721 F.2d 828, 830 n. 4 (D.C.Cir.1983). Thus, "[i]f withholding frustrates legitimate public interest ... the material should be released unless the government can show that disclosure would risk circumvention of lawful agency regulation [or statutes]." *Id.* As in *Department of Air Force v. Rose,* even if information is found to be "predominantly internal,"

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

898 F.2d 793

898 F.2d 793, 283 U.S.App.D.C. 196, 58 USLW 2563
**(Cite as: 898 F.2d 793)**

it could still be released if it implicates a legitimate public interest.

Since the list Schwaner seeks is a predominantly internal document, the issue, therefore, becomes whether withholding it would frustrate a legitimate public interest. In making that determination, the agency and the courts must look to the core purposes of FOIA, rather than to the individual requester's motivations. "Except for cases in which the objection to disclosure is based on a claim of privilege and the person requesting disclosure is the party protected by the privilege, the identity of the requesting party has no bearing on the merits of his or her FOIA request." *Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 1480, 103 L.Ed.2d 774 (1989). Schwaner is not put at a *disadvantage* because the purpose of his request is to obtain a list of names for use as business prospects. However, like any other request, Schwaner's should be evaluated in terms of whether it has any relationship to the core purposes of FOIA in determining whether release of the information he seeks implicates the public interest. While a commercially-minded requester is as entitled to information as any other, the existence of a commercial motivation is not to be equated with " the public interest." *Cf. National Treasury Employees Union v. Griffin,* 811 F.2d 644, 647-48 (D.C.Cir.1987). Appellant's commercial motivation does not make him less worthy of receiving information about the government, but " the disclosure of names of potential customers for commercial business is wholly unrelated to the purposes behind the FOIA and was never contemplated by Congress in enacting the act." *Wine Hobby USA v. IRS,* 502 F.2d 133, 137 (3d Cir.1974). This simply means that a commercial purpose for a request is not enough, by itself, to satisfy the public interest exception to exemption 2.

The Supreme Court's most recent examination of the nature of the public interest in FOIA cases was in the context of the privacy exemption. *Reporters Committee,* 109 S.Ct. at 1481. There, the Court reaffirmed the idea advanced in *Rose,* (an exemption 2 case) that "the basic purpose of the Freedom of Information Act [is] 'to open agency

action to the light of public scrutiny.' " *Id.* The Court went on to *link* that purpose to public interest analysis in holding the public interest in information sought under FOIA must be within "the ambit of the public interest that the FOIA was enacted to serve." *Id.* at 1482. So it would appear that the public interest is grounded in a nexus between the information sought and the central purposes of FOIA. Whether information sought under FOIA is a matter of genuine public interest will depend on whether the request serves FOIA's core purposes, *i.e.,* "to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny." *Id.* In essence, the question is whether the information sought would improve the public's understanding of the way in which government operates.

Appellant asserts that the list he seeks meets that test because it might prove useful to a reporter writing a story about the abusive treatment of enlisted men by superior officers at Bolling Air Force Base. In such a case, he argues, the requested information would be infused with a public interest because it could lead to other information **801 **204 that might shed light on the operation of a government facility. The problem with this argument is that it relies on sheer speculation. This judge finds nothing in the cases dealing with exemption 2 to suggest that agencies, in responding to a FOIA request, are required to accommodate interests that are essentially conjectural. In fact, the cases suggest the contrary. The Supreme Court has stated that exemption 2 relieves agencies of the obligation to disclose internal matters "in which the public could not *reasonably* be expected to have an interest." *Rose,* 425 U.S. at 369-70, 96 S.Ct. at 1603 (emphasis added). In like manner, this court has asserted that the exemption protects material that is "not *likely* to be the subject of public interest." *Martin v. Lauer,* 686 F.2d at 34 (emphasis added). While a hypothetical investigation may rise to the requisite threshold to require agency disclosure, the *Martin/ Rose* tests imply a more immediate and tangible public concern than that argued by Schwaner in the instant case.

It is always possible to conjure up a web of circumstances that could invest virtually *any*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

internal procedure with a potential public interest. Thus if exemption 2 is to be applied to FOIA requests in any meaningful way, agencies-and the courts-should limit their inquiry to ascertaining whether the asserted public interest is genuine rather than speculative. Otherwise, the exemption will be stripped of much of its utility and agencies will be subjected to the administrative burdens that Congress intended that they be spared.

This is not to say, of course, that lists of names and addresses maintained by the military may not be of sufficient public interest to warrant disclosure under FOIA. In *National Ass'n of Atomic Veterans v. Director, Defense Nuclear Agency,* 583 F.Supp. 1483 (D.D.C.1984), for example, the agency declined the request for a list of former servicemen who had been exposed to radiation in connection with atmospheric nuclear arms tests, invoking exemption 6 in order to protect the privacy of the former servicemen. The Association justified its request largely on the basis that it was conducting two medical studies designed to identify a new radiation-associated neuromuscular disease and to develop clinical diagnostic criteria for application to individuals exposed to radiation during the course of those tests. The court concluded, on the basis of the evidence presented, that the studies were serious, that they could not be properly conducted without access to a list of those who had been exposed, and that the public interest was such as to give rise to a "singularly strong interest in disclosure." *Id.* at 1485-86, 1488. Although recognizing that in exemption 2 analysis a less compelling interest than that required for exemption 6 could allow a FOIA requester to overcome an agency's reasons for withholding under the respective exemptions, the facts in *Atomic Veterans* underscore the insubstantial nature of appellant's claim of public interest in this case.

Because the material sought by appellant is related solely to internal personnel rules and practices, and is not the subject of genuine public interest, this judge would affirm the judgment of the District Court.

C.A.D.C.,1990.
Schwaner v. Department of Air Force

898 F.2d 793, 283 U.S.App.D.C. 196, 58 USLW 2563

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

commercial mailing lists are produced.

11.  Current Department of Defense policy with respect to the release of the identities and duty address of its service members pursuant to the FOIA is the result, in part, of the decision in Hopkins v. Department of the Navy, Civil No. 84-1868 (D.D.C. Feb. 5, 1985), which precipitated the development of a consistent policy throughout the military services by the Department of Defense.  The ruling in Hopkins, which applied only to the names and addresses of military personnel for certain units within the Marine Corps Development and Education Command at Quantico, Virginia, brought into question the then-existent policy of the military services to withhold from commercial requesters -- under Exemption 6, to protect personal privacy -- the identities and duty addresses of all military personnel.

12.  Following the Hopkins ruling, the Department of Defense ultimately developed a new privacy policy on 13 March 1986 (copy attached as Exhibit F).  That policy instructed that disclosure of names and duty addresses of servicemembers assigned to units that are sensitive, routinely deployable or stationed in foreign territories would be regarded as constituting a clearly unwarranted invasion of privacy unless an extraordinary public interest in disclosure outweighed this privacy interest.  This policy does not restrict the disclosure of the identities and duty stations of the remaining servicemembers stationed in the United States.  This policy, with respect to privacy concerns, is summarized on the Department of Defense's recently published

**UNCLASSIFIED**

NAVAL MESSAGE
DEPT OF NAVY

ROUTINE
R 082041Z DEC 85 ZYB
FM SECNAV WASHINGTON DC
TO ALMAV

ZYUW RUEWAAA8330 3432058

UNCLAS //N05720//
ALMAV 150/85
SUBJ: DEPARTMENT OF THE NAVY FREEDOM OF INFORMATION ACT (FOIA)
PROGRAM/SECNAVINST 5720.42C INTERIM CHANGE
A. SECNAV WASHINGTON DC 141823Z AUG 84 ALMAV 090/84
B. SECNAVINST 5720.42C
1. IN HOPKINS V. DEPARTMENT OF THE NAVY, A U.S. DISTRICT COURT
HELD THAT MILITARY MEMBERS HAVE LITTLE, IF ANY, PRIVACY INTEREST
IN PROTECTING THEIR MILITARY ADDRESSES, EVEN WHEN RELEASE WILL BE
TO A COMMERCIAL REQUESTER. BECAUSE OF THIS COURT DECISION,
PARA 1A OF REF A IS CANCELLED.
2. A NEW POLICY IS BEING DEVELOPED CONCERNING RELEASE OF LISTS OF
NAMES AND DUTY ADDRESSES OR DUTY TELEPHONE NUMBERS OF SERVICE
MEMBERS. IN THE INTERIM, THE FOLLOWING GUIDANCE IS PROVIDED:
   A. DEPARTMENT OF THE NAVY INFORMATION SECURITY POLICY
PROHIBITS DISCLOSURE OF NAMES AND DUTY ADDRESSES OR DUTY TELEPHONE
NUMBERS OF SERVICE MEMBERS WHEN DISCLOSURE WOULD REVEAL CLASSIFIED
INFORMATION. THE APPROPRIATE EXEMPTION WOULD BE 5 U.S.C. 552(B)(1).
   B. UNCLASSIFIED INFORMATION ABOUT SERVICE MEMBERS ALSO MAY BE
WITHHELD WHEN DISCLOSURE "WOULD CONSTITUTE A CLEARLY UNWARRANTED
INVASION OF PERSONAL PRIVACY" (5 U.S.C. 552 (B)(6)). DISCLOSURE
OF NAMES AND DUTY ADDRESSES OR DUTY TELEPHONE NUMBERS OF MEMBERS
ASSIGNED TO UNITS THAT ARE STATIONED IN FOREIGN TERRITORIES,
ROUTINELY DEPLOYABLE, OR SENSITIVE CAN CONSTITUTE A CLEARLY
UNWARRANTED INVASION OF PERSONAL PRIVACY. DISCLOSURE OF SUCH
INFORMATION POSES A SECURITY THREAT TO THOSE SERVICE MEMBERS
BECAUSE IT REVEALS INFORMATION ABOUT THEIR DEGREE OF INVOLVEMENT
IN MILITARY ACTIONS IN SUPPORT OF NATIONAL POLICY, THE TYPE OF
NAVAL UNIT TO WHICH THEY ARE ATTACHED, AND THEIR PRESENCE OR
ABSENCE FROM THEIR HOUSEHOLDS. RELEASE OF SUCH INFORMATION AIDS
THE TARGETING OF SERVICE MEMBERS AND THEIR FAMILIES BY TERRORISTS
OR OTHER PERSONS OPPOSED TO IMPLEMENTATION OF NATIONAL POLICY.
ONLY AN EXTRAORDINARY PUBLIC INTEREST IN DISCLOSURE OF THIS
INFORMATION CAN OUTWEIGH THE NEED AND RESPONSIBILITY OF THE NAVY
TO PROTECT THE TRANQUILITY AND SAFETY OF SERVICE MEMBERS AND THEIR
FAMILIES WHO REPEATEDLY HAVE BEEN SUBJECTED TO HARASSMENT, THREATS
AND PHYSICAL INJURY. UNITS COVERED BY THIS INTERIM POLICY
INCLUDE:
   (1) THOSE LOCATED OUTSIDE THE 50 STATES, DISTRICT OF
COLUMBIA, COMMONWEALTH OF PUERTO RICO, GUAM, U.S. VIRGIN ISLANDS
AND AMERICAN SAMOA;
   (2) ROUTINELY DEPLOYABLE UNITS - THOSE UNITS FORMING THE
CORE OF THE OPERATING FORCES, I.E., ORGANIZED, EQUIPPED AND
SPECIFICALLY TASKED TO PARTICIPATE DIRECTLY IN STRATEGIC OR
TACTICAL OPERATIONS. AS SUCH, THEY NORMALLY DEPLOY FROM HOME PORT
OR PERMANENT STATION ON A PERIODIC OR ROTATING BASIS TO MEET
OPERATIONAL REQUIREMENTS OR PARTICIPATE IN SCHEDULED EXERCISES.

FOR THE MARINE CORPS, THIS INCLUDES ALL FLEET MARINE FORCES. FOR
THE NAVY, THIS INCLUDES ROUTINELY DEPLOYABLE SHIPS, AVIATION
SQUADRONS AND OPERATIONAL STAFFS. IT DOES NOT INCLUDE SHIPS
UNDERGOING YARD WORK OR WHOSE PRIMARY MISSION IS SUPPORT OR
TRAINING, E.G., YARD CRAFT AND AUXILIARY AIRCRAFT LANDING TRAINING
SHIPS.
   (3) UNITS ENGAGED IN SENSITIVE OPERATIONS. THOSE
PRIMARILY INVOLVED IN THE CONDUCT OF COVERT, CLANDESTINE OR
CLASSIFIED MISSIONS, INCLUDING UNITS PRIMARILY INVOLVED IN
COLLECTING, HANDLING, DISPOSING OR STORING OF CLASSIFIED
INFORMATION AND MATERIALS. THIS ALSO INCLUDES UNITS ENGAGED IN
TRAINING OR ADVISING FOREIGN PERSONNEL. EXAMPLES OF UNITS COVERED
BY THIS EXCEPTION ARE SEAL TEAMS, SECURITY GROUP COMMANDS, WEAPONS
STATIONS AND COMMUNICATION STATIONS.
3. EXCEPTIONS TO THIS GUIDANCE MUST BE COORDINATED WITH THE CHIEF
OF NAVAL OPERATIONS OR COMMANDANT OF THE MARINE CORPS PRIOR TO
RESPONDING TO THE REQUESTER, INCLUDING ALL REQUESTS FOR THIS TYPE
OF INFORMATION FROM MEMBERS OF CONGRESS. POINT OF CONTACT FOR
NAVY ACTIVITIES IS MRS. G. AITKEN, (OP-09B30), AUTOVON 227-
1459/224-2004, COMMERCIAL (202) 697-1459/694-2004. POINT OF
CONTACT FOR MARINE CORPS ACTIVITIES IS MRS. B. THOMPSON, (MPI-60),
AUTOVON 224-1122 OR COMMERCIAL (202) 694-1122.
4. UPON COMPLETION OF THE NEW POLICY GUIDANCE, A CHANGE WILL BE
ISSUED TO REF B. BT

---

CNO WASH DC
ACTION ALMAV DISTRIBUTION(1)                          ADV    308
                                                      (A)
INFO   AAUSN(2) 00(3) 005(1) 00A(1) 00E(1) 00J(1) 00P(1)
       00K(1) 00S(1) 09(1) 098(1) 098C(1) 098F(2) 0984(1)
       098H(1) 09034(40) 0982(3) 098W(1) 09F(1) 09J(1)
       09R(8) 09X(1) 090(1) 90(2) 92(8) 91(1) 01(2) 01B(2)
       01B1(1) 11(2) 13(5) 14(2) 15(5) 18(5) 02(1) 21(5)
       22(6) 23(1) 29(1) 03(2) 095EG(1) 03P(1) 30(1) 32(2)
       35(8) 37(2) 39(5) 04(2) 04R(1) 40(8) 41(1) 42(1)
       44(1) 45(1) 05(19) 06(1) 80(4) 61(1) 62(1) 63(4)
       64(1) 65(2) 093(1) 931(1) 932(1) 933(1) 939(1)
       094(1) 940(1) 940C(1) 940E(1) 941(3) 941B1(1) 943(3)
       942(3) 956(1) 945(2) 095(2) 950(1) 951(5) 955(2)
       953(3) 954(4) 098(3) 980(1) 981(1) 982(3) 983(1)
       988(1) 987(1) 006(2) 007(6) 0981(1) 008(1) 009(2)
       0090(2) 009QCP(2) 009R(2) DONIRM(1) DPS(1)
       DIRNSCPO(1) OPA(1) USLO(2) NRC(1) COMPT(10) NAVOCC(1)
       NCPC(5) OLA(7) NCC(1) 009Y1(1) GNF(2) NAVBCSTSVC(7)
       SC(1)

SECNAV WASH DC
ORIG   09B3(2)                                         7
INFO   SN(5)                            (D)

DEPARTMENT OF DEFENSE
JCS MESSAGE CENTER

PRIORITY                          ZYUW RUEKJCS0060 3092212
052212Z NOV 85
FM SECDEF WASHINGTON DC//ASD:PA/DFOISR//
TO  CINCLANT NORFOLK VA
    USCINCEUR VAIHINGEN GE //ECJ1-AR//
    USCINCSO QUARRY HEIGHTS PM  //SCLA//
    USCINCPAC HONOLULU HI//J147A//
    USCINCRED MACDILL AFB FL//RCJ1-AG-SF//
    USCINCCENT MACDILL AFB FL        HQ SPACE CMD PETERSON AFB CO

UNCLAS
SUBJ:  RELEASE OF NAMES AND DUTY ADDRESSES OF MILITARY PERSONNEL
REF:  TELECON, MR GENTRY, REDCOM AND COL TALBOTT, DFOISR
    OCTOBER 29, 1985
1. REFERENCE REQUESTED GUIDANCE RELATIVE TO RELEASE OF MILITARY
NAMES AND UNIT ADDRESSES TO THE PUBLIC PURSUANT TO THE FREEDOM OF
INFORMATION ACT (5 USC 552).
2. DEFENSE PRIVACY BOARD DECISION MEMORANDUM 83-1, JUNE 7, 1983
IS NO LONGER APPLICABLE TO REQUESTS FOR NAMES AND UNIT ADDRESSES
OF MILITARY PERSONNEL, DUE TO THE DECISION IN HOPKINS VS DEPARTMENT
OF THE NAVY.  A NEW DECISION IS CURRENTLY BEING STAFFED REGARDING
THIS ISSUE, AND IS NOT YET AVAILABLE AS OFFICIAL DOD POLICY.
3. IN THE INTERIM, THE FOLLOWING GUIDANCE IS PROVIDED, PENDING
RELEASE OF THE NEW DECISION MEMORANDUM.  DEPARTMENT OF DEFENSE
INFORMATION SECURITY POLICY PROHIBITS THE DISCLOSURE OF NAMES & DUTY
ADDRESSES OF SERVICEMEN WHEN DISCLOSURE WOULD REVEAL CLASSIFIED
INFORMATION.  THE APPROPRIATE EXEMPTION WOULD BE 5 USC 552(B)(1).
UNCLASSIFIED INFORMATION ABOUT SERVICEMEMBERS ALSO MAY BE WITHHELD
WHEN DISCLOSURE "WOULD CONSTITUTE A CLEARLY UNWARRANTED INVASION OF
PERSONAL PRIVACY" (5 USC 552(B)(6)).  DISCLOSURE OF NAMES OR DUTY
ADDRESSES OF MEMBERS ASSIGNED TO UNITS THAT ARE SENSITIVE, ROUTINELY
DEPLOYABLE, OR STATIONED IN FOREIGN TERRITORIES CAN CONSTITUTE A
CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY.  DISCLOSURE OF
SUCH INFORMATION POSES A SECURITY THREAT TO THOSE SERVICEMEMBERS
BECAUSE IT REVEALS INFORMATION ABOUT THEIR DEGREE OF INVOLVEMENT
IN MILITARY ACTIONS IN SUPPORT OF NATIONAL POLICY, THE TYPE OF
MILITARY UNIT TO WHICH THEY ARE ATTACHED, AND THEIR PRESENCE AT OR
ABSENCE FROM THEIR HOUSEHOLDS.  RELEASE OF SUCH INFORMATION AIDS THE
TARGETING OF SERVICEMEMBERS AND THEIR FAMILIES BY TERRORIST & OTHER
PERSONS OR ORGANIZATIONS OPPOSED TO IMPLEMENTATION OF NATIONAL POLICY
BY UNITS OF THE ARMED FORCES.  ONLY AN EXTRAORDINARILY ENORMOUS
PUBLIC INTEREST IN DISCLOSURE OF THE ABOVE-MENTIONED INFORMATION CAN
OUTWEIGH THE NEED AND RESPONSIBILITY OF THE DOD TO PROTECT THE
TRANQUILITY AND SAFETY OF SERVICEMEMBERS AND THEIR FAMILIES WHO
REPEATEDLY HAVE BEEN SUBJECTED TO HARASSMENT, THREATS,
AND PHYSICAL INJURY.
4. EXCEPTIONS TO THIS GUIDANCE MUST BE COORDINATED WITH THIS
OFFICE, PRIOR TO A FINAL RESPONSE TO THE REQUESTER.  ALL REQUESTS FOR
THIS TYPE OF INFORMATION FROM MEMBERS OF CONGRESS WILL BE REFERRED TO
THIS OFFICE FOR PROCESSING.
5. THE NEW DECISION MEMORANDUM WILL REFLECT THE ESSENCE OF
PARAGRAPH 3, ABOVE.  UPON FINALIZATION, THAT MEMORANDUM WILL BE
ISSUED TO ALL DOD COMPONENTS.  RESPONSES TO FOIA REQUESTS DURING THE
PERIOD BEFORE THE MEMORANDUM IS ISSUED WILL NOT REFERENCE THE NEW
MEMORANDUM IN ANY SENSE. BT

                                              12

                                    (D,6,7,F)
ACTION ASD:PA(1)
INFO   CMB QC(1)  SECDEF:(1)  SECDEF(9)

    MCN=85309/06594    TOR=85309/2211Z    TAD=85309/2216Z    COSN=MAK852
                                                      PAGE 1 OF 1
                    UNCLASSIFIED                     052212Z NOV 85 App.



**DEPARTMENT OF THE NAVY**
OFFICE OF THE CHIEF OF NAVAL OPERATIONS
WASHINGTON, DC 20350-2000

IN REPLY REFER TO

5720
Ser 09B30P/6U312791
February 4, 1986

Mr. Jack A. Schwaner
American Federal Agency
P.O. Box 6100
Newport News, VA  23606

Dear Mr. Schwaner:

This responds to your Freedom of Information Act request of
January 9, 1986, in which you seek information on the Navy's
policy for release of lists of names and duty addresses or duty
telephone numbers of service members.

As a result of Hopkins v. the Department of the Navy, the members
of the Legal Committee of the Department of Defense Privacy Board
reevaluated the policy on the release of names and duty addresses
of its service members.  Since this Department is a member of that
Board, we were aware of the proposed changes.  Our message of
December 9, 1985, was a result of intensive meetings, a review of
a Department of Defense (DOD) message that was sent to major DOD
components, and the need to take action on outstanding
appeals/lawsuits dealing with this issue.

The enclosed messages are provided in response to your request.
The fees associated with the processing of your request have been
waived.

                          Sincerely,

                          *G. R. Aitken*

                          / G. R. AITKEN
                          Hd, PA/FOIA Branch
                          By direction of the
                          Chief of Naval Operations

Enclosures

App. 19



# DEPARTMENT OF THE AIR FORCE
## HEADQUARTERS AIR FORCE DISTRICT OF WASHINGTON
### BOLLING AIR FORCE BASE, DC 20332

Mr Henry C. Schwaner
American Federal Agency
Post Office Box 6100
Newport News, Virginia 23606

Dear Mr Schwaner

This is in response to your Freedom of Information Act request of 24 July 1987.   The list of DOD personnel names and duty addresses you requested is exempt from disclosure under current guidelines.   It reflects administrative matters not of legitimate interest to the general public to justify the administrative burden imposed in fulfilling your request.   Authority for this exemption is Title 5, United States Code, Section 552(b)(2) and Air Force Regulation 12-30, paragraph 10b.

Should you decide that an appeal to this decision is necessary, you must write to the Secretary of the Air Force within 45 days from the date of this letter.   Include in your appeal your reasons for reconsideration and attach a copy of this letter.   Address your letter as follows:

>          Secretary of the Air Force
>          THRU:   AFDW/DADF
>          Bolling AFB DC   20332-5000

Sincerely

JOHN BACS, Colonel, USAF
Vice Commander

Civil Action No. 88-0560-GAG

Exhibit B



**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS UNITED STATES AIR FORCE**
**WASHINGTON, DC**

SAF/AADQ (Kip Ward)                APR   8 1987

Release of Names and Duty Addresses

ALMAJCOM-SOA/DADF

1. Here is some additional guidance on this subject.

2. We quote for your information part of a letter from OSD (on another sub-
ject) which deals with release of lists for personnel in the US and US terri-
tories. ". . .the regulation will also have an additional exemption available
for use to cover the continental US and US territories. This is the (b)(2)
exemption which allows withholding under the administrative burden concept of
purely internal administrative matters of no consequential benefit to the
public. This concept has Department of Justice support, although it has not
been tested in court."

3. One of our major commands has been denying lists of names and duty
addresses based on this administrative burden aspect. Here is a quote of
their applicable paragraph - it sounds good to us. "The requested list is
exempt from disclosure. It reflects trivial administative matters of no
genuine public interest to justify the substantial administrative burden
imposed in fulfilling your request. Authority for this exemption is Title 5,
United States Code, Section 552(b)(2), and Air Force Regulation 12-30,
paragraph 10b."

4. If you use the foregoing, be sure appeal procedures are given to the
requester.

JAMES J. VALDEZ, Major, USAF
Chief, Admin Comm & Records Mgt Div
Directorate of Information Management
   and Administration

(2c)

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 88-5341                          September Term, 19    89

CA 88-00560

United States Court of Appeals
For the District of Columbia Circuit

Henry C. Schwaner,

Appellant

v.

Department of the Air Force

FILED  MAY 0 9 1990

CONSTANCE L. DUPRÉ
CLERK

BEFORE:    Buckley and Williams, Circuit Judges, Revercomb*,
District Judge

O R D E R

Upon consideration of appellee's petition for rehearing,
filed April 30, 1990, it is

ORDERED, by the Court, that the petition is denied.

Per Curiam
FOR THE COURT:
CONSTANCE L. DUPRE, CLERK

BY:    *Robert A. Bonner*

Robert A. Bonner
Deputy Clerk

District Judge Revercomb would grant the Petition for
Rehearing

*of the United States District Court for the District of
Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

IVERSITY OF CALIFORNIA, LOS ANGELES                              UCLA

BERKELEY · DAVIS · IRVINE · LOS ANGELES · RIVERSIDE · SAN DIEGO · SAN FRANCISCO   SANTA BARBARA · SANTA CRUZ



SCHOOL OF LAW
405 HILGARD AVENUE
LOS ANGELES, CALIFORNIA 90024-1476

Jack Schwaner
PO Box 6100
Newport News, VA 23600                        May 15, 1990

        Re:   Schwaner v. Department of the Air Force, No.
              88-0560 (D.C. Cir.)

Dear Jack:

        As you can see from the enclosed, the Court has denied the
government's motion for reconsideration in your case. It is
possible that the government will ask the full court to reconsider
the matter or petition for Supreme Court review, but there chances
of success in either case are minimal. You may now renew your
request for the list and it should be honored. Let me know if it
is not.

        Please convey this information to Phil as I have no current
address for him.

                                              Sincerely,

                                              Craig Becker

cc:   Jack Dempsey

# UNIVERSITY OF CALIFORNIA, LOS ANGELES

UCLA

BERKELEY · DAVIS · IRVINE · LOS ANGELES · RIVERSIDE · SAN DIEGO · SAN FRANCISCO



SANTA BARBARA · SANTA CRUZ

SCHOOL OF LAW
405 HILGARD AVENUE
LOS ANGELES, CALIFORNIA 90024-1476

Jack Schwaner
PO Box 6100
Newport News, VA 23600                    May 15, 1990

      Re:  Schwaner v. Department of the Air Force, No.
           88-0560 (D.C. Cir.)

Dear Jack:

    As you can see from the enclosed, the Court has denied the
government's motion for reconsideration in your case.  It is
possible that the government will ask the full court to reconsider
the matter or petition for Supreme Court review, but there chances
of success in either case are minimal.  You may now renew your
request for the list and it should be honored.  Let me know if it
is not.

    As to our bill, please contact Jack Dempsey at (202)775-5900
to work out a schedule of payments.  I am sure he will be agreeable
to your paying over time given your personal bankruptcy.

    Please convey this information to Phil as I have no current
address for him.

                    Sincerely,

                    Craig Becker

cc:  Jack Dempsey



**OFFICE OF THE ASSISTANT SECRETARY OF DEFENSE**
WASHINGTON, DC 20301-1400

FEB 15 1991

Ref: 91-CORR-026

MEMORANDUM FOR DEPUTY ADMINISTRATIVE ASSISTANT TO THE SECRETARY
                    OF THE AIR FORCE

SUBJECT:  Routinely Deployable Units – Names and Duty Addresses

    This responds to the Air Force's request for advice on when
a unit is considered routinely deployable with regard to release
of names and duty addresses under the Freedom of Information Act
(FOIA).

    The term, routinely deployable was originally defined by the
Navy to include its units which routinely deploy from home ports
on peacetime operational missions, thereby placing those units in
foreign seas or airspace.  After the Air Force's loss in
Schwaner, this office announced the intent to place all names and
duty addresses in the National Technical Information Service.  At
that point, the Army and the Air Force FOIA policy offices asked
for advice on defining sensitive and routinely deployable units,
as apparently such unit addresses had never been withheld by
either Service.  Consequently, we provided the definitions
contained in our October 5, 1990 memorandum.

    Due to the method by which the Air Force deploys units, it
is not easy to determine when a unit, which has part of its
personnel deployed, becomes eligible for denial under the
routinely deployable definition.  The Air Force (as well as all
Services) may consider a unit deployed on a routine basis, or
deployed fully overseas when 30 percent of the unit has been
either alerted, or actually deployed.  In this context, alerted
means that a unit has received an official written warning of an
impending operational mission outside the United States.  After
discussions between yourself and a member of my staff, and in
light of combat training experiences at the National Training
Center, it was determined that this percentage was a prudent
figure offering the best of FOIA litigation possibilities, while
meeting operational concerns of the Air Force.

    This has been coordinated with the DoD OGC.

                                W. M. McDonald
                                Director
                                Freedom of Information
                                  and Security Review

# FOIA APPEAL
# TO USCG HEADQUARTERS D.C
# AND USCGRTC
# NO RESPONSE TO PLAINTIFF

## EXHIBITS & DATES
## 1 Thru 13

# 13- 1 Dec.,06
# 12-14 Feb.,o7
# 11-15 Feb.,07
#10 omitted
# 9-  18 Feb ,07
# 8-  20 Feb.,07
#.7-    4 Mar.,07
# 6-  28 Feb.,07
# 5-  10 Apr.,07
# 4-  12 Apr.,07
# 3-  13 Apr.,07
# 2-  29 May,07
# 1-    7 Jun., 07

(A)-5 Nov.,07

(B)-15 Nov.,07

Exhibits sent by the Plaintiff #1 Through #13 to USCG Headquarters D.C.
and USCGRTC concerning the unanswered  Foia Appeal

(13)

FROM:                                                    1 Dec.06
Jack A.Schwaner
1 Great Oak Cir.  Apt.B-44
Newport News, Va. 23606

TO:
LtCommander Richard Batson
USCGRTC
End of Route
238 Yorktown, Va. 23680


Dear Sir:

Soon after 9/11, 2001 attack your command refused to honor my FOIA requests

in furnishing "non-deployable" students names and addresses though it was not

considered sensitive information. These FOIA restrictions was enacted by Attorney

General Ashcroft and sent to heads of all Federal Dept. and Agencies, violating a

Court of Appeals order # 88-5341 in Schwaner vs Dept of the Air Force, therefore

again I am making a FOIA request and it will be limited in scope to  the following:

(1) name and rate of all US Coast Guard student personnel . (2) to include their

Military addresses.  All fees will be paid in accordance to US Coast Guard

Regulations. The FOIA inquiry of this letter and its response should be completed in

the allotted time mandated by the FOIA.

Respectfully,

Jack A Schwaner

Enclosures.
(a)-US Court of Appeals Sept. 9,1989
(b)-FOIA Update  Vol. XI, No.2
(c)-FOIA  Update  Vol. IX, No.3
(d)-FOIA source book
(e)-FOIA source book page 767
(f)-Office of the Assistant of the Defense Feb.15,1991
(g)-FOIA-Time for Response

**(12)**

U.S. Department
of Transportation

**United States
Coast Guard**

Commanding Officer
U. S. Coast Guard
Training Center Yorktown

Yorktown, VA  23690-5000
Staff Symbol: cl
Phone: (757) 898-2374
FAX: (757) 898-2329

5720
February 14, 2007

Mr. Jack A. Schwaner
1 Great Oak Circle
Apartment B-44
Newport News, VA  23606

Dear Mr. Schwaner:

This is in response to your letter dated January 19, 2007, received by this office on January 23, 2007, in which you requested various information under the Freedom of Information Act. Your Freedom of Information Act request has been assigned control number 075-07-02382.

Because you are requesting records for commercial use, the Freedom of Information Act requires assessment of fees for search, review, and duplication costs related to your request. When the total amount of fees does not exceed $10, the Coast Guard will not charge for fees related to a request. However, when the total amount of fees will likely exceed $25, the Coast Guard is required to inform the requester in writing of the estimated cost, unless the requester indicated a willingness to pay fees in advance.

The copy of the Coast Guard Instruction and Training Center Instruction you requested are enclosed. There is no charge associated with these items. However, the remainder of your request will require a more extensive search of the records of this office. The estimated cost for search, review, and duplication related to the remainder of your request is $200.00.

If you desire, you may consult with this office to reformulate your request to lower your cost while still meeting the needs of your request. If you do not desire to reformulate your request, please inform this office in writing of your willingness to pay fees in excess of $25. To ensure a timely response to any future correspondence with this office, please write "Freedom of Information Act Request" on both your letter and the envelope.

If you have any questions, please contact me at (757) 856-2374.

Sincerely,

R. E. BATSON
Lieutenant Commander, U. S. Coast Guard
Freedom of Information/Privacy Act Coordinator
By direction of the Commanding Officer

**(11)**

**U.S. Department of
Homeland Security

United States
Coast Guard**

Commanding Officer
U. S. Coast Guard
Training Center

End of Route 238
Yorktown, Virginia 23690-5000
Staff Symbol: cl
Phone: (757) 856-2374
Fax: (757) 856-2516

5720
FEB 1 5 2007

Mr. Jack A. Schwaner
1 Great Oak Circle
Apartment B-44
Newport News, Virginia 23606

Dear Mr. Schwaner:

This is in response to your letter dated December 1, 2006, in which you requested information under the Freedom of Information Act (FOIA).

The Freedom of Information Act requires an assessment of fees for search, review, and duplication costs related to your request. When the total amount of fees does not exceed $10, the Coast Guard will not charge for fees related to a request. However, when the total amount of fees will likely exceed $25, the Coast Guard is required to inform the requester in writing of the estimated cost, unless the requester has indicated a willingness to pay fees in advance. Based on the information you provided, our estimate for the cost of the search, review, and duplication associated with your request is $150.00. Please inform this office in writing of your willingness to pay this fee, a greater or lesser amount, or if you are seeking a waiver of applicable fees.

To ensure a timely response to any future correspondence with this office, please write "Freedom of Information Act Request" on both your letter and the envelope. Your initial request did not contain this information and as a result its processing was delayed. Placing your phone number on any future correspondence, while not required, may help expedite clarification of this or any future requests. My point of contact for this matter is LCDR Richard Batson.

In addition, I have determined that some information you requested is exempt from disclosure because it contains personal information, such as the names of Coast Guard personnel. Due to the heightened interest in the personal privacy of Coast Guard personnel that is concurrent with the increased security awareness demanded in times of national emergency, this personal information is exempt from disclosure under the authority of 5 U.S.C. § 552(b)(6). Release of this information would result in a clearly unwarranted invasion of personal privacy while shedding little or no light on how the Coast Guard carries out its statutory duties. I will therefore redact this exempted information from any records I ultimately release to you.

I am the person responsible for the partial denial of your request. Concurring with this decision is LCDR Richard Batson, the Staff Judge Advocate for this command.

This letter constitutes a partial denial of your request. Therefore, you may appeal this decision. Your appeal must be in writing and must be submitted within 30 days from the date of this letter. Your letter must (1) indicate that you are making an appeal based on a partial denial of a request made under the Freedom of Information Act; (2) include the specific reason(s) for a reconsideration of the denial; and (3) refer to the tracking number assigned to your request by the Coast Guard.

5720

FEB 1 5 2007

The tracking number for your request is 075-07-02382. Write "FOIA Appeal" on the face of the envelope and include a copy of this letter in your package. Send your appeal to:

Commandant (CG-611)
U.S. Coast Guard
Attn: FOIA / PA Officer
2100 Second Street SW
Washington, DC 20593-0001

Sincerely,

Anne T. Ewalt
Captain, U.S. Coast Guard

2

**(9)**

18 Feb,07
Jack A.Schwaner
1 GreatOak Cir. Apt B-44
Newport News,Va.
(757) 595-2804

Richard E.Batson
LtCdr,Us Coast Guard
Foia/Privacy Act Coordinator

Dear Sir:

I received your dated letter of Feb.14,07 and you have complied to my Foia request in my Paragraph #3. Paragraph#1,this Foia request does not fall under (1) Educational/ Scientific.(2)-Commercial.(3)-News Media,(4)-All others (Personal) pertains to my cost factor, its contents would be possibly useful and for my violation since 1982 is non-existence thus making your Foia fee of $200 is abhorrent/inconsistent. Paragraph #2-(cyber Cafe) restrictions was invented by I believe 0-4 Lunday and rubber stamped by the Commander ,to rectify this reasoning I need all memos,notes,etc. Relating to this matter.

## TRACEN YORKTOWNINST 1740,1G

(a) I want to bring to your attention due to my condition USCGRTC is violating the American with Disability Act. 1990 . I check in the gate and will show my USCGRTC permit and appointment card to any authorized personnel ,but will not hunt for the OOD.

(b)-Need to know where are these specific offices and lounge areas are located ?

(c)-I do not provide a written list to anyone,I will have appointment cards with name,date and time. And location.

Respectfully,

Jack A.Schwaner

4 Mar.07
Jack A.Schwaner
1 Great Oak Cir. Apt B-44
Newport News Va. 23606

R.E.Batson
LtCdr, U.S. Coast Guard.
Foia/Privacy Act Coordinator

Dear Sir:

My Letter of 18 Feb,07 concerning Foia request # 075-07-02382 ,this file may be considered

closed by your Command because of my refusal based on the cost factor. Your letter of 28 Feb.07

failed to address the main issue, its obvious according to the Command that I failed number (4)

I may consider it a present lost ,but retrievable under recovery,including the Cyber Cafe fiasco,.

Though I did not request any Foia inquiries in the letter of 18 Feb.07 that relates to (a),(b) and (c) ,

any reasonable answers to my questionnaire would be greatly appreciated.


Respectfully,

Jack A.Schwaner

(6)

U.S. Department
of Transportation

**United States
Coast Guard**

Commanding Officer
U. S. Coast Guard
Training Center Yorktown

Yorktown, VA  23690-5000
Staff Symbol: cl
Phone: (757) 898-2374
FAX: (757) 898-2329

5720
February 28, 2007

Mr. Jack A. Schwaner
1 Great Oak Circle
Apartment B-44
Newport News, VA  23606

Dear Mr. Schwaner:

    This is in response to your letter dated February 18, 2007, regarding our response to your FOIA request 075-07-02382 of January 19, 2007.  In this letter you indicated that you were not willing to pay the fees associated with this request.  As such we have closed your file.

    If you desire, you may consult with this office to reformulate your request to lower your cost while still meeting the needs of your request.  To ensure a timely response to any future correspondence with this office, please write "Freedom of Information Act Request" on both your letter and the envelope.

Sincerely,

R. E. BATSON
Lieutenant Commander, U. S. Coast Guard
Freedom of Information/Privacy Act Coordinator
By direction of the Commanding Officer

(5)

10 April,07
Jack A.Schwaner
1 Great Oak Cir. Apt. B-44
Newport News Va. 23606
(757) 595-2804

Richard E.Batson
LtCdr US Coast Guard
Foia/Privacy Act Coordinator

Dear Sir:

Your of Feb.14,07 letter failed to respond my letter dated 18 Feb.07 (enclosed) to Paragraph (a)

how the American Act of 1990 concerning Tracen Yorktownist 1740-1G effect me if I request a permit

to work at USCGRTC. Paragraph (b),If permitted to work in USCGRTC ,1740-1G lacks specific

office and lounge locations.

A Foia request may not be a requirement on (a) & (b),but regardless, a response to these two

questions would be appreciated.

Any Foia fees concerning Mr. Lunday memos, correspondence or any related material about

Jack A.Schwaner should be waived and released.

A final denial by US Coast Guard Hq is a requirement before trial, but there seems to be a bit of

confusion at Hq in my appeal.

The writer or writers of the Cyber Cafe affair will emerge at discovery time, free of Foia fees.

Respectfully,

Jack A.Schwaner

P.S: called two times at your office with no response which is a good thing because I am getting better

in my spelling and typing.

(4)

12 April,07
Jack A.Schwaner
1 Great Oak Cir. Apt. B-44
Newport News Va. 23606
(757) 595-2804

Richard E.Batson
LtCdr US Coast Guard
Foia/Privacy Act Coo rdinator

Dear Sir:

Your of Feb.14,07 letter failed to respond my letter dated 18 Feb.07 (enclosed) therefore I will ask in a more define manner  Paragraph (a) how the American Act of 1990 concerning Tracen Yorktownist 1740-1G effect me if I receive a permit to work at USCGRTC. Paragraph (b),If permitted to work in USCGRTC 1740-1G  lacks specific office and lounge locations.

A Foia request may not be a requirement on (a) & (b),but regardless, a response to these two questions are imperative

Any Foia fees concerning Mr. Lunday memos, correspondence or any related material about Jack A.Schwaner should be waived and released.

A final denial by US Coast Guard Hq is a requirement before trial, but there seems to be a bit of confusion at Hq in my appeal.

The writer or writers of the Cyber Cafe affair will emerge at discovery time, free of Foia fees.

Respectfully,

Jack A.Schwaner

P.S: called two times at your office with no response which is a good thing because I am getting better in my spelling and typing.

(3)

13 April,07
Jack A.Schwaner
1Great Oak Cir.Apt. B-44
Newport News,Va. 23606
(757) 595-2804

Commandant (CG-11)
U.S. Coast Guard
Attn: Foia/Pa Officer
2100 Second Stret S.W.
Washington D.C. 20593-0001

Dear Sir:

I received your letter which you indicate a bit of confusion and for me to be more define on my

Foia Appeal therefore I am enclosing the following:

(a)-A Foia letter dated 1 Dec.06 addressed to LtCdr Richard Batson USCG,  USCGRTC legal Officer

requesting name & rate including their military addresses of US C G student personnel stationed

in USCGRTC(non- Deployable).

(b)-A response dated 15 Feb.07 signed by Anne t.Ewalt Captain USCG Commanding Officer of

USCGRTC to my letter 1 Dec,06 denying my Foia request under 5 USC 552(b)(6).

There seems to be reasonable delays by both parties concerning Foia request # 075-07-02382.

I hope this will comply with your request.

Respectfully,

Jack A.Schwaner

(2)

20 May,07
Jack A.Schwaner
1Great Oak Cir. Apt. B-44
Newport News ,Va. 23606
(757) 595-2804

USCGRTC
End of Route 268
Yorktown,Va 23680
Attn:Richard Batson Lcdr USCG (Legal Officer)

Dear Sir:

My letter dated 13 April,07 (enclosed) addressed to Foia/pa Officer in Washington D.C. In readdressing of my Foia Appeal # 075-07-02382 ,the 20 days response has expired and is long over due I would appreciate your aid in its present status.

Respectfully

Jack A.Schwaner

(A)

**U.S. Department of Homeland Security**

**United States Coast Guard**

Commandant
United States Coast Guard

2100 Second Street, S.W.
Washington, DC 20593-0001
Staff Symbol: CG-611
Phone: (202) 475-3522
Fax: (202) 475-3928

5720
FOIA A08-007

NOV - 5 2007

Mr. Jack A. Schwaner
Great Oak Circle, Apt. B-44
Newport News, VA 23606

Dear Mr. Schwaner:

We have received your undated Freedom of Information Act (FOIA) Appeal on June 19, 2007.

Your appeal has been assigned FOIA Appeal Case Number A08-007. The Coast Guard continues to confront a backlog of appeals. A small staff, coupled with the necessity of complying with new mandates regarding information security and privacy issues, impedes our ability to answer your appeal more expeditiously. It remains our policy to process appeals in the order in which we receive them; to do otherwise would be unfair to all requesters. All appeals require thorough research and analysis prior to final action. In addition, all appeals are reviewed at high levels to ensure the appropriate decision is made. These are time-intensive, but necessary, procedures.

Our records indicate that there are 29 appeals currently on file. Of these, there are currently 28 appeals requiring response before yours. Given the considerations discussed above, we cannot accurately estimate when your appeal will be decided. However, please be assured we are making conscientious efforts to provide you with a decision as soon as possible.

We apologize for any inconvenience this delay may cause. In the event future correspondence regarding your appeal is required, please include the FOIA Appeal Case Number and send it to:

Commandant (CG-611)
United States Coast Guard
Attn: FOIA/PA Appeals
2100 Second Street, SW
Washington, DC 20593-0001

Sincerely,

R. D. OUELLETTE
Freedom of Information Act Coordinator
U.S. Coast Guard
By direction

(B)

Nov.,15,07
Jack A.Schwaner
1 Great Oak Cir. Apt B-44
Newport News Va. 23606

United States Coast Guard
Attn :FOIA/PA Appeals
2100 Second Street SW
Washington,D.C 20593-0001

Dear Mr R.D. Ouellette,

Thank you for your letter of Nov. 5,2007.concerning the long pending response concerning my

Foia Appeal ,but regardless what the USCG considers the delay a legitimate reason ,the law was still

violated.. As matter of courtesy I am submitting some past correspondence sent to USCG Headquarters

and USCGRTC ,also I included my pending Federal suit that presently needs more fine tuning , lets

hope the mail will be delivered ,"Note the dates of the exhibits". It may be a day late and a dollar short

because this suit will soon be instituted in the U.S District Court in D.C. against the US CGRTC.

Yorktown,Va. As you can see after this long delay I came to the conclusion that my Foia Appeal was

either ignored , lost or forgotten. If by chance my Foia Appeal is honored than I have no case, but I

have no illusions on the this Appeal, and being a realist a "denial" is or will be in the mill in the

forthcoming USCG response.

Respectfully,

Jack A.Schwaner

(8)

20 Feb.07
Jack A,Schwaner
1 Great Oak Cir.Apt B-44
Newport News Va 23606
(757) 596-2604

USCGRTC
End of Route 268
Yorktown Va.23680
Att: Lt.Cdr.Richard Batson (Legal Officer)

Dear Sir,

    I recently received letters form you and the base Commander's denying me most of my Foia

request under 5 U.S.C,  552 (b)(6).I am following up a Appeal which is a waste of a stamp so I am

preparing a suit to used for my future intentions(enclosed). ,Another suit is in the making and will

include  again USCGRTC and HQ USCG based on allegations found in my long winded 3 page letter,a

copy sent to you as a matter of courtesy,.Both suits will be handled Pro-se.A partial bio of myself is

enclosed to indicate to  the Coast Guard they are not dealing with a retard.

Respectfully,

Jack A.Schwaner

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JACK A. SCHWANER | USCG, ETAL |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **86888**
(EXCEPT IN U.S. PLAINTIFF CASES)

*Pro Se w/p*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Case: 1:07-cv-02350
Assigned To : Sullivan, Emmet G.
Assign. Date : 12/19/2007
Description: FOIA/Privacy Act

### II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
   Plaintiff

☐ 3 Federal Question
   (U.S. Government Not a Party)

Ⓧ 2 U.S. Government
   Defendant

☐ 4 Diversity
   (Indicate Citizenship of Parties
   in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ☐ A. *Antitrust* | ☐ B. *Personal Injury/ Malpractice* | ☐ C. *Administrative Agency Review* | ☐ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

### ☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil*

| Real Property | Bankruptcy | Forfeiture/Penalty | |
|---|---|---|---|
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| **Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant)<br>☐ 871 IRS-Third Party 26 USC 7609 | **Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

④

| ☐ **G. Habeas Corpus/ 2255** | ☐ **H. Employment Discrimination** | ☐ **I. FOIA/PRIVACY ACT** | ☐ **J. Student Loan** |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General**<br>☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)**<br><br>***(If pro se, select this deck)*** | ☐ **895 Freedom of Information Act**<br>☐ **890 Other Statutory Actions (if Privacy Act)**<br><br><br>***(If pro se, select this deck)*** | ☐ **152 Recovery of Defaulted Student Loans (excluding veterans)** |
| ☐ **K. Labor/ERISA (non-employment)** | ☐ **L. Other Civil Rights (non-employment)** | ☐ **M. Contract** | ☐ **N. Three-Judge Court** |
| ☐ **710 Fair Labor Standards Act**<br>☐ **720 Labor/Mgmt. Relations**<br>☐ **730 Labor/Mgmt. Reporting & Disclosure Act**<br>☐ **740 Labor Railway Act**<br>☐ **790 Other Labor Litigation**<br>☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)**<br>☐ **443 Housing/Accommodations**<br>☐ **444 Welfare**<br>☐ **440 Other Civil Rights**<br>☐ **445 American w/Disabilities-Employment**<br>☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance**<br>☐ **120 Marine**<br>☐ **130 Miller Act**<br>☐ **140 Negotiable Instrument**<br>☐ **150 Recovery of Overpayment & Enforcement of Judgment**<br>☐ **153 Recovery of Overpayment of Veteran's Benefits**<br>☐ **160 Stockholder's Suits**<br>☐ **190 Other Contracts**<br>☐ **195 Contract Product Liability**<br>☐ **196 Franchise** | ☐ **441 Civil Rights-Voting (if Voting Rights Act)** |

**V. ORIGIN**

◉ **1 Original Proceeding** ☐ **2 Removed from State Court** ☐ **3 Remanded from Appellate Court** ☐ **4 Reinstated or Reopened** ☐ **5 Transferred from another district (specify)** ☐ **Multi district Litigation** ☐ **7 Appeal to District Judge from Mag. Judge**

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

*5 USC 552 - F.O.I.A.*

---

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint

**JURY DEMAND:** ☐ YES ◉ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction) ◉ YES ☐ NO   If yes, please complete related case form.

**DATE** *12/19/07*   **SIGNATURE OF ATTORNEY OF RECORD** *wcd*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd